Um, Mr. Good morning. May it please the court. I'd like to reserve five minutes for rebuttal. This case shows what happens when a police officer acts not in the public's interest, but in his own self interest. And this appeal turns on a single legal principle on a motion for summary judgment and on a motion to dismiss the evidence in the pleadings must be viewed and all reasonable inferences must be drawn in favor of the non  of the approving party. That principle agree. I'll agree with all of that. And in fact, that's true. I look don't we have to look at the statements from the body camera really isn't that what we're really looking at in this case. That is that is what we're looking at and because otherwise we would look at only the statements which the plaintiff gave. But because we got this body camera and we know what the body camera says shows, we look at those statements and that's what we're evaluating, right? The body camera is highly relevant, obviously. Of course, there are there are important. Now, if that's so, I read I I looked at what happened on the in the body camera. I looked at all of that. Your client was never threatened with arrest, right? Oh, I disagree, Your Honor. Now, just a minute. She nobody said I'm going to arrest you. The that was never said. The record reflects that Cohen. We said that if she wants to press the charges, then we're going to have to read rights, get statement, then arrest her for the extortion. Now, that statement, I concede, was not made in the presence of Ms. Hall. It was made in the presence of Ms. Griego. But the record also reflects that Ms. Griego was serving as the shuttle diplomat in this controversy. And in fact, but but just a minute, I guess what I'm trying to figure out, I have your client in mind. I have her client in mind of what she heard and what she didn't hear and what she was told and what she wasn't told, because that's the circumstance I really have to think about on a First Amendment claim. The officer said, no one is ever going to see jail time and no one is going to jail today. The officer said, if you choose to make a case, it will be forwarded to the prosecutors. The prosecutors will review the case and determine if they follow through. The officer said, when asked if he was going to arrest somebody today, the officer said, no, no, no, I'm not going to do that. The officer explained that Hall might be listed as a suspect if LaToto filed a complaint, but that would not show up on background checks. So I'm saying to myself, I'm trying to decide if this is persuasion or coercion. Understood. I'm trying to look at the totality of the circumstances in a different situation than in an immigration case. And I'm saying to myself, why isn't this case like Nunez versus Los Angeles? In Nunez versus Los Angeles, the mere threats and harsh words were not sufficient, and these were really threats and harsh words. I've got this in the middle of all of that in this case, are not sufficient to establish an adverse action for purposes of retaliation under the First Amendment. So I guess I'm trying to figure out, why is this any different than Nunez? Other than the threats in Nunez were worse than the ones here. The significance here is that the threats were conditioned on Ms. Hall stopping her protected activity of trying to file a complaint. Nobody, it didn't say, there was nobody, she was never asked to withhold her statement. Never. To Your Honor's point about viewing the totality of the circumstances, I think it's important to step back and understand. Well, that's what I tried to do in trying to get there. Understood, Your Honor. That's why you're getting the questions you're getting. What happened on the day of the incident is that Ms. Hall called 911 and she said that her boss was in the middle of attacking her. Now, I refer the court to the first four minutes of the body Ms. Hall thought that Officer Koanui was there to protect her or to help her, but she was not even able to complete a single sentence. Before she finished her first sentence, Officer Koanui interrupted her and said, I already heard what Leonard had said. She was then stunned, right? She didn't know what was going on. She knew at that point that this officer was not there to take down her report, but yet she persisted. And within two and a half minutes of the door opening, Officer Koanui then, in a very assertive tone, accuses her of having committed extortion. Not only does he say that, he emphasizes multiple times within that first four to five minutes that this was a class defund. Well, that's a good argument about what he did. I'm not sure he really did that. As I heard what was happening, it was, if you're going to do this, you might, or you could be, or it is something that could happen. And in all the time that he was saying that, he was saying, no one's ever going to go to jail. Nobody's going to do any problem. You're not even going to be in a background check. It didn't seem to me that it was coercion at all. It was just, at best, persuasion. And I'm not even knowing if he was trying to persuade or if he was just stating his opinion. Also, I understand your honest position. I mean, all I'm trying to do is look at the thing. Of course. I mean, I think one of the difficult things here is in terms of understanding a threat of arrest as distinguished from an arrest is kind of what are we looking for for the threshold, right? Is it, I mean, if it's that she doesn't feel free to leave, reasonable person wouldn't feel free to leave. Well, then that's something we usually look at arrest. So I'm trying to understand what is the rule you would have us adopt for what makes this threat distinguishable from other threats because arrest was on the table in your view. Understood, Your Honor. I mean, the rule, there's no rule that I'm advocating for. It's the ordinary First Amendment rule that an adverse action is something that would chill a person of ordinary firmness. I also would emphasize that this court has held. Can you sort of, I don't want to stop you from answering that question, but that can't be the or at least that's not a complete statement of the rule because that doesn't, it has to be tied to something, an adverse action tied to protected activity. So can you give us a complete statement of the rule of the First Amendment law that you're saying was clearly established and that was violated here? Well, that you're not allowed to engage in such an adverse action, something that would chill a person of ordinary firmness from continuing to engage in protected activity. And that causation standard, it's very, very well established within the Ninth Circuit that it's just whether or not there was a substantial, whether or not the protected conduct was a substantial or motivating factor in the adverse action. But I wanted to also point this court to White versus Lee and Brodheim versus Cry, which in turn relies on the U.S. Supreme Court's decision in Bantam Books. But there, in all of these cases, the Ninth Circuit has very clearly held that the threat of invoking legal sanctions against a party is enough to count as an adverse action. Now all these other questions about causation. What do we do about Neves then? So how would you always handle that? I want to emphasize a couple things. Neves is about retaliatory arrests. This is not an arrest claim. It's a retaliatory threat. And so that framework doesn't apply. However... Well, if that framework doesn't apply, and I'm not trying to take away from your argument, seems to me that Mulligan versus Nichols is the appropriate case. As Mulligan says, that retaliation claims against government speech warrant a cautious approach by the courts. Now we have set a high bar when analyzing whether speech by government officials is sufficiently adverse to give rise to a First Amendment retaliation claim. That seemed to me to hit dead on to what we've got here rather than the cases you've cited to me, which I also read. But this is the situation. And that's why I said right to begin with, let's look at what really happened here. And in the whole of what happened here, the one statement that you continue to suggest is in fact a coercion or is something more than I thought it ever was, but was given in all of these other statements. And that's the reason when I talk about this cautious approach and high bar, I'm saying, Counselor, how do I get there? A couple points, Your Honor. First of all, the fact that Your Honor and I disagree about how we're interpreting the facts and what happened, right? There was a lot that was going on. That under the relevant legal standard, these are hotly contested facts. And a reasonable jury could easily view all of the evidence. Well, it's a hotly contested if you didn't narrow it down now as you did to watching that video, which I can watch and which the district court can watch. I'm not suggesting that that is sufficient. Again, the record needs to be viewed in its entirety. And Officer Koanui baselessly invokes this idea of extortion 11 times throughout. Does other purposes of the retaliation claim, to come back to Judge Smith's question, doesn't she have to have heard that threat in order to be chilled by it? Of course. And there are at least three instances where Ms. Hall heard directly from Koanui these threats of extortion, that she had committed extortion. What if the officer, there may be a subject, there may be a genuine dispute here, but what if the officer has probable cause? That has no bearing here. And first of all, he has absolutely no arguable cause for extortion. What if there's probable cause for theft? That's not relevant because within the first two and a half minutes of the interaction, he's accusing her of extortion. So at the time that he was saying that she had committed extortion, he arguably, if Nieves applies, needed to have probable cause at that moment that she had committed extortion. Now, what is extortion under the Hawaii revised statutes? It's theft by threat. And it's not just any kind of threat. It's a statutory threat. Meaning, for example, that Ms. Hall threatened to harm, physically injure Mr. Lototo if something didn't happen. There's absolutely no evidence of, there's absolutely no basis for any reasonable officer to believe that there was extortion. And in fact, on appeal, Koanui has dropped, has not even taken the position that there was any probable cause for extortion. Suppose we agree with you that there's no probable cause for extortion and that a threat to arrest someone for extortion would chill a person of reasonable firmness, etc. It still needs to be tied to a protected activity. You would agree, right? And so, though, as I read, as I watched the video, most and perhaps all of the references to extortion that I saw were, like, you need to give back the phone or you will be charged with extortion. And you're not suggesting that retaining the phone is protected First Amendment activity, right? No, I'm not, Your Honor. So what you need is an explicit or perhaps implicit link between the potential extortion charges and the filing of a complaint, which is protected activity. Yes. And where do I look in the video to see that? Because I didn't. The first five minutes, Your Honor, because within, I don't want to give a precise, but the point is in that initial interaction, Ms. Hall recounts the allegations of assault. And then she says, I would like to press charges. Within two minutes, roughly, of that statement that she would like to press charges, Officer Koanui makes the first accusation that she's committed extortion and then emphasizes that she's committed a class B felony. And the case law makes very clear that proximity in time between protected activity and adverse action is circumstantial evidence of causation or motivation. So that's one example. I'm mindful of time. Well, I think we'll give you enough time because we've been asking a lot of questions. But I want to be sure that you were able to complete your answer to one of the earlier questions that you got. You're not suggesting that, I mean, you've referred a number of times to the totality of the circumstances in the whole record. You're not suggesting that there's evidence other than what's in the video of what threats might have been made, are you? There are. There are examples. And I would refer the court to Ms. Hall's second declaration because, of course, and this is important on the conspiracy point to the extent the court reaches that issue. But Mayoho Pohina admits she forgot to turn on her body worn camera footage. And Ms. Hall's declaration includes testimony about what occurred during that encounter before. So, of course, I will concede that, you know, your honor should review the body worn camera and take that as, quote unquote, true. But there are other relevant facts that are not captured on the body worn camera. But and do those relate to Officer Kohanui? Because his camera was on the whole time he was there, right? Let me let me give you an example. For instance, there are various statements that were made to Ms. Grigo, who was serving as the shuttle diplomat. Now, Officer Kohanui would say all these things to her, suggesting that what Robin had done was was serious. And then he said, go in and talk to her. What we don't have on the body worn camera is what did Ms. Grigo retell or say to Ms. Hall about what Officer Kohanui had told Ms. Grigo? And that that also suggests that just because Ms. Hall did not hear some of these very threatening statements doesn't mean that she didn't perceive them eventually through Ms. Grigo. And what we haven't said a whole lot about qualified immunity so far here, but what case or cases would you point to that you think would have put someone in the position of Officer Kohanui on notice that it would violate the First Amendment to say that retention of the phone might be extortion? And to say that, I think, as you said, in proximity to a discussion of whether a report would be filed. The best case, well, I think that the backdrop is that the Ninth Circuit has, since at least 1990, held very clearly that police officers are not allowed to punish people for engaging in protected speech. And then this actually answers Judge Smith's question. I really would ask that the Court review Duran very closely because not only does it say that, but it also says, no less well established is the principle that government officials in general and police officers in particular may not exercise their authority for personal motives. Duran was someone who actually got arrested, right? It was not a threat of arrest case. Of course. And on that point, Your Honor, I would refer the Court to Reed v. Lurance. And in that case, 2017 decision, which was before this incident, that case was about the threat of arrest. And that was, he was there observing the police activity and they wanted him to move and not observe the police activity. Yes. I concede that the underlying factual predicate was slightly, you know, was different. However, the principle is clear that you cannot threaten to arrest someone just because they're engaging in First Amendment protected activity. Well, that principle is, I think it is quite clear. But the Supreme Court has told us many, many times not to define clearly established law at a high level of generality. And we have to look at the level of the particular circumstances of the officer. And I think that the difficulty is in what might be called at best the ambiguity of the link between the protected activity and the threatened action by the officer. And so I'm not sure what, given that ambiguity, I'm having trouble seeing the case that would have told the officer that he couldn't say the things that he said. The other case I would point, Your Honor, to the extent that the factual predicate or the factual analogy is important would be Meyer v. Board of County Commissioners. It is a 10th Circuit case. However, the Ninth Circuit quoted extensively from it in adopting the rule in Entler v. Grigoire that the filing of a criminal complaint is protected First Amendment activity. But the facts are eerily similar there because there the plaintiff tried to file a police report against someone, against her attacker. And that someone was friends with the three police officers who did not take her report. And the court held that there was a First Amendment retaliation claim there. So those, all of these cases in combination would make more than clear to any reasonable officer that you're not allowed to threaten someone simply because they want to press charges against their attacker. I know I'm well over my time, but if I could have a couple  I know you're dividing time. I don't know what order you're in. May it please the court. I'm going to have, I believe, seven and a half minutes. Yes. Good morning. My name is Brad Silva. I'm here on behalf of City and County of Honolulu, Sergeant Mayuho Pohina and Officer Castillo. I am happy to try to answer any questions the panel may have. But given the limitations of time, I was intending to focus my analysis on retaliation and probable cause, who is similarly situated, and deliberate indifference. So retaliation and probable cause, I will begin by noting for retaliation claim, Ms. Hall was required to show a substantial causal relationship between her protected conduct and the alleged adverse action. Now we have argued that there was not an adverse action here. There were not threats made based upon an objective viewing of the video. But even assuming that we do have a threat, even assuming that we do have adverse action, we maintain that Officer Kohanui had probable cause to affect an arrest either for extortion or at a minimum for theft. And that changes the analysis here. And we can find that probable cause based... So what is the, I guess, the Hawaii law that's relevant to whether arrests for misdemeanors? Arrests for... I don't have the specific legal provision, but for either offense, if the officer had probable cause, reasonable, trustworthy information to believe that the offense had occurred, they do have the ability to affect that arrest. And whether or not Officer Kohanui intended to affect arrest, our position is merely that the information he had, even just the information that he had from Ms. Hall, was sufficient for probable cause on either of those two offenses. And that that probable cause serves to sever any substantial causal relationship between the alleged adverse action and what the officer did here. The existence of probable cause being important because it is weighty evidence that the officer's action was not based on a retaliatory motive. And Mr. Kim pointed out, and this court has pointed out, that we've not looked at probable cause in the context of a generalized retaliation claim. The closest we have is probable cause in the context of a retaliatory arrest, and that's Nieves. Right, so why should we adopt that? I mean, this was an extended encounter. There was no snap judgment here that the court seemed to be concerned about. Why would it apply and kind of swallow up the standard test for First Amendment retaliation? I would maintain it doesn't swallow up the test. It's merely something that's considered in administering the test. Additionally, it would be somewhat nonsensical, as we argued in our briefing, to say that with probable cause, Officer Kohanui could affect a retaliatory arrest. But the mere discussion of the possibility of arrest would not be something that's protected. What would be the the undisputed facts that we'd be looking at that would be material to whether Officer Kohanui had probable cause? I think that would just be the information that Officer Kohanui had obtained at the time at which he made the statements that are being construed as threatening. What do we do with the fact that, for example, that he reached out to the complainant for reasons unknown, the counter-complainant? And so, as your friend opened, announced essentially the cause he had for the investigation before he'd even heard Ms. Hall's complaint. I don't know that him informing her that he'd already spoken to Mr. Lototo affects the analysis as to probable cause. You know, if he had said, I heard what Mr. Lototo said, we need to hear nothing further from you, that would be highly problematic. But he does receive Ms. Hall's report. He does receive her statement. She is given the opportunity, actually multiple opportunities throughout the genesis of the matter, to explain exactly what she believed to have occurred. And that is the protected conduct. It's making the report to the police. You know, in this... As protected conduct is alleged in the complaint, right? Yes. Okay. If in fact the government has a great case as it relates to the retaliation on the First Amendment, or the First Amendment retaliation claim, why would we throw probable cause in the middle of this case? Your Honor, we've argued... Is that because you don't think it's a good claim without having probable cause in the middle of it? Your Honor, we like to advance every argument that we... Well, I understand that. I'm just trying to say, I mean, I frankly wondered why you're going to make me determine whether there was probable cause in this particular situation, and then add it to the claim, rather than just going on the claim as it is. So, as I noted at the beginning, we believe the District Court correctly concluded that there were no threats of arrest. There was no adverse action. I know we could have rested just upon that in our briefing. However, we do believe there is an issue here with probable cause that was raised in the opening brief. It's something that we felt we needed to respond to. We maintain there was probable cause, and under Nieves, the existence of probable cause would sever the relationship between the adverse action necessary to show. And even though Nieves is a retaliatory arrest claim, the genesis of the law, at a minimum, would make it unclear to an officer in Kohanui's situation that he could not disclose the possibility of arrest to Ms. Hall without becoming liable for a First Amendment retaliation. Suppose we don't agree with you on the probable cause part of the analysis. What about the statement that the officer made to Ms. Griego, if Hall wants to make the charges, then we're going to have to arrest her for the extortion? Suppose he had said that directly to Ms. Hall, like, if you make the charges, then we're going to have to arrest you for extortion. Do you think that would violate the First Amendment? Not in this case. Because, again, because of the probable cause? That's part of it, yeah. But setting aside that for a moment, if you make the charges, we're going to arrest you for extortion. Would that violate the First Amendment? Your Honor, I don't believe it would because she's already made her report to the government. It's been received. The filing of a police report is not what the protected activity here is. Why isn't that? It seems more in the nature of the petition clause than the speech clause, but filing a report with the government, how is that not protected activity? Your Honor, I see I'm running low on time, but I will address your question. So something that has been somewhat confused throughout this case, the reporting, the protected activity is making the complaint to the police. It's not the filing of a written police report. It is making the complaint. Why isn't the filing of a written police report also protected activity? Because Ms. Hall is not the one making the written police report. That's something that the police would do based upon the information that they have. The retaliation is the officer's declination to do so or at least do so on equal terms as Mr. Lototo's complaint. And there are reasons in the record why Mr. Lototo's complaint was treated differently, which goes somewhat to the class of one analysis. But again, under Smith v. Arizona and myriad other cases, the right, and this is in the context of the right petition, is to make the complaint to the police. But that's unidirectional. There's not any particular response that's required. So to the extent that Ms. Hall is complaining that she made her report to... I don't think it's a response. It's if an officer takes a complaint for show and then wads it up and throws it in the trash for retaliatory reasons. I guess I'm not sure why that still isn't encompassed by the First Amendment. It's not getting to the government. It's getting stopped by the officer who's retaliating. And Your Honor, I guess the most I can say on that point is that based upon the existing case law saying that it is unidirectional, that a particular response is not required, at a minimum there would be an uncertainty in the law as Officer Kohanui confronted it at the time that would at a minimum mandate a finding of qualified immunity under the circumstances that you're discussing. Thank you. Thank you. Mr. Smith. May it please the court. I'm Lex Smith. I represent Officer Christopher Kohanui. I've had the opportunity to hear your questions and the discussion. So I'll just dive into a I'd like to make sure you hear from me. The totality of the statements Officer Kohanui made as viewed on the body cam, he does not reflect a threat to arrest her. What about, I mean, the statement I just asked your friend about, like, which admittedly is indirect. It's through Ms. Griego. But if she wants to make the charges, then we're going to have to arrest her for extortion. Why isn't that a threat that if she goes ahead with complaining, she'll be arrested? First, I would point out there's no evidence that Ms. Griego said that or repeated that to Ms. Hall. And secondly, I think what Officer Kohanui said directly to Ms. Hall was that nobody was going to get arrested. So I think that's, as I say, in the totality of what Officer Kohanui said, it was clear that nobody was going to be arrested for this rather minor kerfuffle. On the totality, it wasn't, it may be ambiguous what, you can make threats by saying I wouldn't want to see, you know, be ashamed if anything happened to you, right? That can count as a threat. But also the kind of course of conduct over the way this unfolded over an hour or more didn't really kind of let go of that issue. There were the kind of discussion of arrest all the way through this period. So why isn't that enough to at least for a jury to draw inferences on summary judgment? I do not, I don't think there's an issue from the body cam footage. I don't think a reasonable juror could from the body cam footage take away a message that Kohanui was threatening to arrest, particularly because he expressly said nobody's going to be arrested today. So nobody's going to go to jail. He clearly did say that she didn't have the phone or that she had possession of the phone and that that was a theft or an extortion. There's no question about that. But he also said that nobody's going to jail. This is all misdemeanor, petty misdemeanor stuff. And that was the message that I would submit. And I think that the district court concluded was overwhelming in the response of Officer Kohanui. I also think I co-counsel brought this up, but I also want to make sure that I make the point that the First Amendment right is the right to raise your grievance to the police. Citizens don't have a constitutional right to have the police do any particular thing in response to the complaint. I think that's clear in the case law, the case law we've cited in our brief. And I would urge the court to recognize that. Now, Counselor, let me ask you one question that I felt interesting. I didn't find any place in what you and your client alleged that you were seeking qualified immunity. Is that correct? We did raise that in the trial court in the motion for summary judgment, but I don't believe we did raise it in our position as appellees. The city briefed it in its brief, which was sort of curious because the municipality doesn't have qualified immunity, only the individual defendants do. Right. Although they do represent two officers as well. But are they, I mean, does their argument, I guess maybe this is a question I should have asked your colleague, do you understand their argument for qualified immunity to apply to your client, even though it wasn't in your brief? I do understand that, but we did not coordinate the briefing to leave it out. We felt there were other arguments that we should be making. If you didn't coordinate the briefing, that suggests that we don't look at, we shouldn't look at their arguments as reflecting your position. It was our choice not to include it. I certainly felt and feel qualified immunity applies to Officer Kohanui here. Oh, if in fact the only way we could help your client was to do qualified immunity analysis, would we need to send that back to the district court? No, I think it's, I think, well, I don't think the district court ruled on that either, but we did make that argument in the district court. So you made the argument in the district court, but you're expressly not making the argument here. We have not raised it in our brief. I think those are the only points I have that have not already been adequately covered today. All right, thank you. Mr. Kim? I just had a few points. I mean, just on that last issue, our position is that Kohanui has forfeited the qualified immunity argument. Now, well, he hasn't necessarily forfeited it altogether. The best he could do is you could might argue that he has forfeited it here, but somebody else has raised it for him. But if in fact we were to grant summary, we were to overturn the summary judgment, that doesn't mean he can't say it in front of the district court the next time, does it? There's no forfeiture of that. Understood. I mean, I think, yes, I'll concede that, your honor. The other point I wanted to make concerns threat, right? We've talked about the conflicting evidence. I wanted to point the court to evidence in the record where Kohanui actually admits that he was threatening Hall. At 38, 37, 3745 to 38 of his body-worn camera, this is what he says in Ms. Griego's presence. Even when I started talking to her about the extortion and the theft, she didn't really seem too receptive to the idea that she could possibly get arrested for something, yeah? That signals that Kohanui's subjective intention was to engage in a threat, and a jury viewing this could easily conclude the same. So this question of whether he committed a threat or not is besides the point when he is the one who's communicating to others that he wanted to threaten her for trying to persist in filing the police report. Now, we've talked a lot about the body-worn camera footage, and I think the important point here is the sequence of events, right? Kohanui's counsel has pointed to instances where Kohanui says, I don't want anyone to go to jail. These are just, you know, these are insignificant crimes. But that is consistent with Kohanui's strategy, or at least a reasonable jury could find that that's consistent with Kohanui's strategy of beginning the interaction very aggressively, you know, upping the stakes, saying you're committing extortion, that's a Class B felony. But then Ms. Hall didn't back down. She continued. And then Officer Kohanui pivoted in his strategy to then suggesting that, oh, these are both petty misdemeanors. No one's going to go to jail. No one's going to get arrested, thus suggesting that if Ms. Hall continued, it would be futile. There would be no point in filing the charges because no one would face any consequences. The through line is that a reasonable jury could view this evidence and conclude that Kohanui was trying to prevent Ms. Hall, deter and prevent Ms. Hall from filing a police report. I believe my time is expiring. The only final point I would make is this probable cause issue. There's no basis to extend Nieves to the threat of arrest. Bela Reyes, this court's decision in Bela Reyes, declined to extend Nieves to the immigration arrest context. And then I would also emphasize that Kohanui himself characterized this dispute as a civil dispute. And I would point the court to Allen versus City of Portland and Stevens versus Rose, both Ninth Circuit precedent, that clarify that probable cause cannot arise from a civil dispute. Thank you very much. We thank all counsel for their helpful arguments and the cases submitted.
judges: SMITH, MILLER, JOHNSTONE